**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Project Agricultural Improvement and Power District, a municipal corporation and political subdivision of the State of Arizona; Headwaters Resources, Inc., a Utah corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> Reynold R. Lee; Casey Watchman; Woody Lee; Peterson Yazzie; Evelyn Meadows; Honorable Herb Yazzie; Honorable Lorene B. Ferguson; Honorable Lorene B. Begay; Leonard Thinn; Sarah Gonnie, <br><br> Defendants. | No. CV 08-8028-PCT-JAT <br><br> **ORDER** |

    Pending before the Court are the Navajo Defendants' Motion to Dismiss (Doc. #34) and Motion for Summary Judgment (Doc. #66), Defendants Gonnie and Thinn's Motion for Summary Judgment (Doc. #70), and Plaintiff SRP's Motion for Summary Judgment (Doc. #54). Because the Court's ruling on the Motion to Dismiss disposes of the case, the Court will not address the Motions for Summary Judgment.

**I. BACKGROUND**

    This case originated with two separate employee complaints filed by Defendants Leonard Thinn and Sarah Gonnie, both members of the Navajo Nation, who worked at the

Navajo Generating Station ("NGS") located near Page, Arizona.  Plaintiff Salt River Project Agricultural Improvement and Power District ("SRP") operates NGS, a large electrical plant that is located on the Navajo Reservation.   SRP contracts with Plaintiff Headwaters Resources ("Headwaters") at NGS.

SRP and other energy utilities entered into a lease (the "1969 Lease") with the Navajo Nation in 1969 to allow SRP to operate the NGS on Navajo Nation land.  At the same time SRP entered into the 1969 Lease, the United States Secretary of the Interior granted SRP and the other utilities certain easements and rights-of-way (the "§323 Grant").  The Secretary entered into the §323 Grant to induce SRP and the others to proceed with the development of the NGS.

On December 2, 2004, Mr. Thinn, a former employee of SRP, filed a charge with the Office of Navajo Labor Relations ("ONLR"), an office created by the Navajo Tribal Council, alleging that he had been terminated without just cause in violation of the Navajo Preference in Employment Act ("NPEA").  The ONLR determined there was probable cause to believe SRP had violated the NPEA and issued a Notice of Right to Sue.  Mr. Thinn filed a complaint against SRP with the Navajo Nation Labor Commission ("NNLC") on November 15, 2005.  The NNLC granted SRP's motion to dismiss the complaint for lack of jurisdiction. Mr. Thinn filed a notice of appeal on May 12, 2006.

On March 2, 2005, Ms. Gonnie, a former employee of Headwaters, filed a charge with the ONLR alleging that she had been terminated for unreasonable and insufficient reasons. On September 16, 2005, the ONLR issued Ms. Gonnie a Right to Sue letter. On September 22, 2005, Ms. Gonnie filed a complaint with the NNLC.  On April 28, 2006, the NNLC granted Headwaters's motion to dismiss for lack of jurisdiction.  Ms. Gonnie appealed on May 12, 2006.

The Navajo Nation Supreme Court ("NNSC") consolidated the Thinn and Gonnie appeals and reversed the judgments of the NNLC.  The NNSC ruled that the NPEA applies to SRP and Headwaters and that the NNLC has jurisdiction to enforce the NPEA against

1   them.  The NNSC remanded to the NNLC for further proceedings on the merits of the Thinn

2   and Gonnie claims.

3          The NNLC set the two cases for hearings in April of 2008.  Based on SRP's request

4   to have the Secretary of the Interior (the "Secretary") address the jurisdictional issue, SRP

5   and Headwaters filed motions to stay the Thinn and Gonnie hearings.  On February 27, 2008,

6   the NNLC denied the motions to stay.  Plaintiffs filed this action on February 29, 2008.  The

7   NNLC later stayed the Thinn and Gonnie cases.

8          The Navajo Defendants filed the pending Motion to Dismiss (Doc. #34) on March 31,

9   2008.  They argue that Plaintiffs must submit the jurisdictional dispute to the Secretary

10  pursuant to the 1969 Lease and cannot file the case with the District Court as a first resort.

11  Plaintiff SRP filed a Motion for Summary Judgment (Doc. #54), which Plaintiff Headwaters

12  joined, on August 8, 2008.  Plaintiffs argue that the NPEA does not apply to the operation

13  of NGS because the Navajo Nation waived its right to regulate employment relations there

14  pursuant to the 1969 Lease.

15         During the pendency of this case, Plaintiffs also have pursued a dispute resolution

16  before the Secretary.  On February 4, 2008, Plaintiffs sent a letter to the Secretary requesting

17  that he rule that the NPEA does not apply to SRP or Headwaters at NGS (Doc. #5 Ex. 12).

18  The Secretary initially responded in a letter dated May 10, 2008, by finding that the Navajo

19  Nation had not clearly waived in the 1969 Lease the Nation's right to regulate employment

20  relationships at NGS.  (Doc. #55-2 Ex. 1 to Ex. A).  Following this response, SRP sent

21  correspondence dated June 24, 2008 to the Secretary requesting reconsideration of his

22  decision.  (Doc. #55-2 Ex. 2 to Ex. A).  In a letter dated August 1, 2008, a different Acting

23  Deputy Assistant Secretary indicated that the Secretary would entertain the request for

24  reconsideration.  (Doc. #55-2 Ex. 3 to Ex. A).  Then, in a letter dated October 2, 2008, the

25  Secretary declined to decide the jurisdictional dispute and instead deferred to the Court's

26  determination of this litigation.  (Doc. #74-2 Ex. 1 to Ex. B).

27

28                                                    - 3 -

1

## II.  ANALYSIS

2       The Navajo Defendants argue that the Court should dismiss this case in favor of the

3   dispute resolution procedure set out in the 1969 Lease.  The Court therefore must decide

4   whether it should exercise jurisdiction over the case or dismiss in favor of the Secretary.

5   "Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of an action

6   from federal court for lack of subject matter jurisdiction."  *Tosco Corp. v. Communities for*

7   *a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).  Normally, on a 12(b)(1) motion,

8   the court is, "free to hear evidence regarding jurisdiction and to rule on that issue prior to

9   trial, resolving factual disputes where necessary.  In such circumstances, no presumptive

10  truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts

11  will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

12  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (internal quotations and citations

13  omitted).[1]

14      The Navajo Defendants base their Motion to Dismiss on the dispute resolution process

15  in the 1969 Lease.  Plaintiffs counter that the concomitant §323 Grant provides for judicial

16  resolution of this case.  Despite relying on the §323 Grant's dispute resolution provisions,

17  Plaintiffs rely on the 1969 Lease for their argument that the Navajo Nation waived its right

18  to regulate employment relations at NGS.

19      In order to decide the dispute resolution issue, the Court must look at the purposes and

20  provisions of the 1969 Lease and the §323 Grant.  The Navajo Nation entered into the 1969

21  Lease with SRP and other energy utilities to allow SRP to locate NGS on the Navajo

22  Reservation.  The 1969 Lease contains the following "non-regulation" clause:

23              <u>Operation of Navajo Generation Station</u>.   The Tribe covenants
            that, other than as expressly set out in this Lease, it will not
24          directly or indirectly regulate or attempt to regulate the Lessees
            in the construction, maintenance or operation of the Navajo
25

26
            [1]Because the Navajo Defendants' Motion to Dismiss deals with jurisdiction, rather
27  than failure to state claim, the Court can consider items not in the Complaint.

28                                          - 4 -

Generation Station and the transmission systems of the Lessees, or the construction, maintenance or operation of the fuel transportation system of the Lessees or the Fuel Transporter. This covenant shall not be deemed a waiver of whatever rights the Tribe may have to regulate retail distribution of electricity on the Reservation Lands.   Nothing herein shall convey to the Lessees, or any of them, any rights to engage in retail distribution of electricity on Reservation Lands.

(Doc. #5 Ex. 1, §16).

The 1969 Lease also contains a clause dictating that the Lessees shall give preference in employment to local members of the Navajo Nation.  (Doc. #5 Ex. 1, §18).  The final pertinent 1969 Lease provisions are §§ 25 (b) & (c), which read:

(b)     All disagreements or disputes between Lessees, or any of them, and the Tribe, except as provided in Section 25(a) hereof, arising under or in connection with the Lease or concerning the validity or binding effect of the Lease, including any disputes arising as to the provisions of the Lease or the rights, duties and obligations of the parties under this Lease . . . are to be referred to the Secretary [of the Interior] for determination, if not theretofore resolved by agreement between the parties. . . .

(c)     In the event the parties fail to promptly resolve a dispute arising under Section 25(b) hereof either party may at any time submit the dispute to the Secretary for decision.   Such submission shall be in writing, setting forth the issues and facts involved with sufficient clarity and detail to apprise the Secretary and the other party or parties of the nature of the dispute, and a copy thereof shall be delivered to the other party, concurrently with the delivery to the Secretary.  It is understood that the Secretary will give notice to the other party of the matter submitted for his decision and will afford the parties the opportunity to submit written or oral support for their respective views.   The procedures followed by and the actions of the Secretary in reaching his decision shall be subject to the applicable provisions, if any, of the Administrative Procedures Act (5 U.S.C. §§1001-1011), or any successor statutory provisions thereto, including those provisions related to judicial review.
After the Secretary has reached his decision on a matter submitted to him for decision as herein provided, written notice of the decision shall be sent to the parties.

(Doc. #5 Ex. 1, §25).

Concurrently with the Lease, the Secretary granted SRP and the other utilities certain

1    easements and rights-of-way to encourage them to build NGS on the Reservation. The

2    Secretary determined that the construction, maintenance, and operation of NGS would

3    benefit the Navajo Nation and would foster the development of resources at the Reservation.

4    The Navajo Nation is not a party to the §323 Grant.

5         The Secretary entered into the §323 Grant to induce SRP and the others to proceed

6    with the development of NGS. The §323 Grant gives SRP and its contractors the rights of

7    "quiet enjoyment and peaceful and exclusive possession of the Granted Lands." (Doc. #5

8    Ex. 2, §21). With regard to dispute resolution, the §323 Grant provides:

9              If under color of Navajo tribal authority, the possession or quiet
               enjoyment of the granted lands or other rights accorded the
10             Grantees by this §323 Grant are interfered with and the Grantees
               are unable to obtain redress for such interference by judicial
11             action in any appropriate State or Federal court because of the
               successful assertion, by the Tribe or by any person or persons
12             purportedly acting under its authority, of immunity from suit or
               want of jurisdiction of any such court over the legal issues
13             involved in such interference or over internal affairs of the
               Tribe, the Secretary will take such action as is authorized to
14             protect the Grantees in the possession and quiet enjoyment of
               the granted lands and other rights granted herein . . . It is
15             understood that before the Secretary shall be called upon to
               assist the Grantees hereunder, they must have first taken all legal
16             action available to them in State or Federal Courts to redress the
               interference and have been frustrated by the successful
17             interposition of tribal immunity from suit or want of jurisdiction
               of any such court over the legal issues involved in such
18             interference or over internal affairs of the Tribe . . .

19   (Doc. #5 Ex. 2, §10).

20        Plaintiffs brought this action to enjoin the NNLC, ONLR, and the NNSC from

21   applying the NPEA at NGS. Citing §16 of the 1969 Lease, Plaintiffs argue that the Navajo

22   Nation waived its right to regulate operations at NGS. Plaintiffs assert that the

23   §16"operation" waiver extends to the regulation of employment relations at NGS. Because

24   the NPEA constitutes employment regulation, it therefore cannot be applied at NGS.

25        Although the Plaintiffs rely on the 1969 Lease for their waiver argument, they claim

26   that the §323 Grant's dispute resolution procedure should control, rather than the 1969

27   Lease's procedure. Plaintiffs argue that Defendants' attempts to have the NPEA apply at

28                                          - 6 -

1    NGS disturb Plaintiffs' rights of possession and quiet enjoyment of the land grants.  If
2    members of the Navajo Nation had built an obstruction on NGS's access road or in some
3    other away disrupted Plaintiffs' use of the land, the Court might agree. But the Navajos have
4    not infringed on Plaintiffs' right to possession or enjoyment of the rights of way.  Rather,
5    Plaintiffs have characterized Defendants' actions as violations of the §323 Grant in an effort
6    to gain the dispute resolution procedures of the Grant.  The Court finds that if the Plaintiffs
7    want to pursue an action based on a right allegedly given to them in the 1969 Lease, they
8    must use the dispute resolution procedures set forth in that Lease.

9         Plaintiffs argue the 1969 Lease's dispute resolution provisions cannot apply because
10   only the Navajo Nation signed the Lease, not the individual Defendants, and Plaintiffs did
11   not name the Navajo Nation as a party.  The Court first notes that none of the Defendants
12   were signatories to the §323 Grant either – the agreement Plaintiffs argue controls the dispute
13   resolution procedure.  Nor was the Navajo Nation a party to the §323 Grant.

14        Further, the Navajo Nation's right to regulate Navajo employment relationships at
15   NGS is at issue here, regardless of whether Plaintiffs named the Nation as a defendant.
16   Section 25 of the 1969 Lease provides that, with the exception of lease payment defaults, all
17   disagreements between SRP and "the Tribe"[2] regarding the Lease shall be referred to the
18   Secretary for determination.

19        This case undisputedly involves a provision of the 1969 Lease – the waiver provision;
20   and the "Tribe" can act only through its members and representatives.  Members of the
21   ONLR, NNLC, and NNSC effectively are acting as the "Tribe" by attempting to apply the
22   NPEA, a Navajo statute, at NGS.  Therefore, although Plaintiffs named the individuals as
23   Defendants to avoid assertions of sovereign immunity, Plaintiffs' disagreement is really with
24   the Nation and its regulation, as enforced by members of the Nation.

25

26   ─────────────────
27        [2]When the Court uses the term "Tribe" to refer to the Navajo Nation, it does so only
     because that is the term used in the 1969 Lease.

28                                              - 7 -

1    Because the Plaintiffs' disagreement regarding the waiver provision of the 1969 Lease

2 is in essence a disagreement with the Navajo Nation, the parties must follow the Lease's

3 dispute resolution process.  It is only equitable that if Plaintiffs want the benefit of the 1969

4 Lease's alleged waiver, they should follow the resolution procedures contained in the Lease.

5 The 1969 Lease provides for referral to the Secretary for dispute resolution.  The process is

6 subject to the provisions of the Administrative Procedures Act, including the APA's judicial

7 review provisions, 5 U.S.C. §701 *et seq.*, which means that Plaintiffs may yet have their day

8 in Court.

9    The Court understands that in his most recent statement on the jurisdictional dispute,

10 the Secretary deferred to the Court for decision.  The Court respectfully disagrees with the

11 Secretary's determination that the Court should initially resolve this dispute.  Because the

12 1969 Lease calls for referral to the Secretary of disputes involving the Lease, the Court will

13 dismiss this case in favor of the parties proceeding before the Secretary as set out in §25 of

14 the Lease.   The Secretary shall decide whether, under Ninth Circuit precedent, the

15 "operations" waiver contained in the 1969 Lease waived the Navajo Nation's right to apply

16 the NPEA at NGS.

17    If the Plaintiffs continue to pursue an action before the Secretary, they shall provide

18 the Secretary with a copy of this Order.  Plaintiffs also shall give copies of any writings

19 submitted to the Secretary to counsel for the individual Defendants.

20    Accordingly,

21    IT IS ORDERED GRANTING the Navajo Defendants' Motion to Dismiss (Doc.

22 #34).  The case is dismissed in its entirety.

23    IT IS FURTHER ORDERED DENYING as moot Plaintiffs' Motion for Summary

24 Judgment (Doc. #54), the Navajo Defendants' Motion for Summary Judgment (Doc. #66),

25 Defendants Gonnie and Thinn's Motion for Summary Judgment (Doc. #70), and any other

26 pending motions.

27    IT IS FURTHER ORDERED that if  Plaintiffs continue to pursue an action before the

28

1    Secretary, they shall provide the Secretary with a copy of this Order.

2        DATED this 13th day of January, 2009.

3

4                                    _____

5                                         James A. Teilborg
                                     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28