**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Project Agricultural Improvement and Power District, a municipal corporation and political subdivision of the State of Arizona; Headwaters Resources, Inc., a Utah corporation,<br><br>   Plaintiffs,<br><br>vs.<br><br>Reynold R. Lee; Casey Watchman; Woody Lee; Peterson Yazzie; Evelyn Meadows; Honorable Herb Yazzie; Honorable Lorene B. Ferguson; Honorable Lorene B. Begay; Leonard Thinn; Sarah Gonnie,<br><br>   Defendants. | No. CV 08-8028-PCT-JAT<br><br>**ORDER** |

   Currently pending before the Court are two Motions to Dismiss by Defendants (Docs. 108 & 125), Cross Motions for Summary Judgment (Docs. 119 & 127), and SRP's Motion for Leave to file Sur-Reply (Doc. 115). The Court now rules on the Motions.

**I. BACKGROUND**

   This case originated with two separate employee complaints filed by Defendants Leonard Thinn and Sarah Gonnie, both members of the Navajo Nation, who worked at the Navajo Generating Station ("NGS") located near Page, Arizona. Plaintiff Salt River Project Agricultural Improvement and Power District ("SRP") operates NGS, a large electrical plant

that is located on the Navajo Reservation. SRP contracts with Plaintiff Headwaters Resources ("Headwaters") at NGS.

SRP and other energy utilities entered into a lease (the "1969 Lease") with the Navajo Nation in 1969 to allow SRP to operate the NGS on Navajo Nation land. At the same time SRP entered into the 1969 Lease, the United States Secretary of the Interior (the "Secretary") granted SRP and the other utilities certain easements and rights of way (the "§323 Grant"). The Secretary entered into the §323 Grant to induce SRP and the others to proceed with the development of the NGS.

On December 2, 2004, Mr. Thinn, a former employee of SRP, filed a charge with the Office of Navajo Labor Relations ("ONLR"), an office created by the Navajo Tribal Council, alleging that he had been terminated without just cause in violation of the Navajo Preference in Employment Act ("NPEA"). The ONLR determined there was probable cause to believe SRP had violated the NPEA and issued a Notice of Right to Sue. Mr Thinn filed a complaint against SRP with the Navajo Nation Labor Commission ("NNLC") on November 15, 2005. The NNLC granted SRP's motion to dismiss the complaint for lack of jurisdiction. Mr. Thinn filed a notice of appeal on May 12, 2006.

Ms. Gonnie, a former employee of Headwaters, also filed a charge with the ONLR alleging that she had been terminated without cause in violation of the NPEA. On September 16, 2005, the ONLR issued Ms. Gonnie a Right to Sue letter. On September 22, 2005, Ms. Gonnie filed a complaint with the NNLC. On April 28, 2006, the NNLC granted Headwater's motion to dismiss for lack of jurisdiction. Ms. Gonnie appealed on May 12, 2006.

The Navajo Nation Supreme Court ("NNSC") consolidated the Thinn and Gonnie appeals and reversed the judgments of the NNLC. The NNSC ruled that the NPEA applies to SRP and Headwaters at the NGS and that the NNLC has jurisdiction to enforce the NPEA against them. The NNSC remanded to the NNLC for further proceedings on the merits of the Thinn and Gonnie claims.

- 2 -

1     The NNLC set the two cases for hearings in April of 2008. Based on SRP's request to have the Secretary address the jurisdictional issue, SRP and Headwaters filed motions to stay the Thinn and Gonnie hearings. On February 27, 2008, the NNLC initially denied the motions to stay, but later agreed to stay the Thinn and Gonnie cases.

    Plaintiffs filed this action on February 29, 2008 against the Director of the ONLR in his official capacity, members of the NNLC in their official capacities, justices of the NNSC in their official capacities (collectively the "Navajo Defendants"), and Ms. Gonnie and Mr. Thinn (collectively the "Employee Defendants"). Plaintiffs seek a declaration that the Navajo Defendants may not lawfully apply the NPEA against SRP, the other participants, and their contractors at the NGS and that the Navajo Defendants may not otherwise regulate employment matters at the NGS. Plaintiffs also seek permanent injunctive relief.

    The Navajo Defendants filed a Motion to Dismiss on March 31, 2008. They argued that Plaintiffs had to submit the jurisdictional dispute to the Secretary pursuant to the 1969 Lease and could not file the case with this Court as a first resort. Plaintiffs filed a Motion for Summary Judgment on August 8, 2008. They argued that the NPEA does not apply to the operation of NGS because the Navajo Nation waived its right to regulate employment relations there pursuant to the 1969 Lease.

    In addition to filing this case, Plaintiffs pursued dispute resolution before the Secretary. On February 4, 2008, Plaintiffs sent a letter to the Secretary requesting a ruling that the NPEA does not apply to SRP or Headwaters at NGS. The Secretary initially responded in a letter dated May 10, 2008, by finding that the Navajo Nation had not clearly waived in the 1969 Lease the Nation's right to regulate employment relationships at NGS.

    Following that response, SRP sent correspondence dated June 24, 2008 to the Secretary requesting reconsideration of this decision. In a letter dated August 1, 2008, a different Acting Deputy Assistant Secretary indicated that the Secretary would entertain the request for reconsideration. Then, in a letter dated October 2, 2008, the Secretary declined to decide the jurisdictional dispute and instead deferred to the Court's determination of this

- 3 -

1 litigation.

2 In an Order filed on January 14, 2009, the Court granted the Navajo Defendants'
3 Motion to Dismiss. The Court found that rather than the Secretary deferring to the Court's
4 determination of the applicability of the NPEA at the NGS, the Secretary should be the party
5 to decide the issue per the terms of the 1969 Lease.

6 The Ninth Circuit Court of Appeals reversed that decision in an unpublished opinion
7 dated March 19, 2010. The Ninth Circuit remanded to this Court for further proceedings
8 with the instruction that Plaintiffs' claims "are thus properly before the district court." (Doc.
9 109-1 p.3.)

10 On April 16, 2010, the Navajo Defendants filed one of the pending motions to
11 dismiss, arguing that Plaintiffs need to file an administrative appeal type of complaint. (Doc.
12 108.) Plaintiff SRP filed a Motion for Summary Judgment on June 7, 2010 (Doc. 119), in
13 which Plaintiff Head Waters joined (Doc. 121). The Navajo Defendants filed a Cross-
14 Motion for Summary Judgment on July 12, 2010. (Doc. 127.) On that same day, the Navajo
15 Defendants also filed another motion to dismiss, that one pursuant to Federal Rule of Civil
16 Procedure 19. (Doc. 125.)

17 **II. ANALYSIS AND CONCLUSION**

18 **A. Navajo Defendants' First Motion to Dismiss**

19 In their first motion to dismiss, the Navajo Defendants argue that this case must be
20 dismissed because it is not an administrative appeal under the Administrative Procedure Act
21 (the "APA"). They assert that this case should be dismissed in favor of an administrative
22 appeal, which can come in the form of a declarative action, against the Secretary. Moreover,
23 they argue, the APA's standard of review should control any appeal from the Secretary's
24 decision.

25 The Navajo Defendants interpret the Ninth Circuit's opinion as holding that the
26 Secretary has reached a final decision on the merits regarding whether the Nation waived its
27 right to regulate employment matters at the NGS. According to the Navajo Defendants, the

28
- 4 -

1  Court therefore must review that final decision only in the form of an administrative appeal.

2  Obviously, given the Court's earlier ruling on the motion to dismiss, the undersigned
3  believed that the Secretary had not reached a final decision on the merits and instead was
4  deferring to this Court to finally decide the issues. The Ninth Circuit did not definitively
5  state whether it concluded that the Secretary had reached a final decision on the merits. The
6  Ninth Circuit did note that the Secretary had declined to reconsider its initial decision and
7  found that Plaintiffs had no further obligation to submit their dispute to the Secretary.

8  Most importantly, the Ninth Circuit held that the Plaintiffs' claims "are . . . properly
9  before the district court." The Ninth Circuit did not hold that the claims would be properly
10 before the Court if couched as an administrative appeal. The Court finds that in order to
11 follow the Ninth Circuit's mandate, the Court must decide the issues as currently framed by
12 Plaintiffs. The Court therefore will deny the Navajo Defendants' first Motion to Dismiss
13 (Doc. 108).[1]

**B. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 19**

15 In their second Motion to Dismiss (Doc. 125), the Navajo Defendants contend that
16 the Court must dismiss this case pursuant to Federal Rule of Civil Procedure 19. They argue
17 that Plaintiffs cannot join the United States and the Navajo Nation as parties because of
18 sovereign immunity and that the case cannot proceed in "equity and good conscience"
19 without those two parties. In its recently amended form, Rule 19 provides, in pertinent part:

**(a) Persons Required to Be Joined if Feasible.**

**(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

---

[1]The Court did not review SRP's proposed Sur-reply when reaching its decision on the first Motion to Dismiss. The Court therefore denies SRP's Motion for Leave to File a Sur-Reply (Doc. 115) as moot.

- 5 -

      **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

          **(i)** as a practical matter impair or impede the persons's ability to protect the interest; or

          **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

. . .

**(b) When Joinder is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

    **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

    **(2)** the extent to which any prejudice could be lessened or avoided by:

      **(A)** protective provisions in the judgment;

      **(B)** shaping the relief; or

      **(C)** other measures;

    **(3)** whether a judgment rendered in the person's absence would be inadequate; and

    **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

. . .

F.R.Civ.P.19(a)&(b).

Although the wording of Rule 19 has changed somewhat, by doing away with the potentially confusing terms "necessary" and "indispensable" parties, the Court follows the same analysis. The Court must engage in a three-party inquiry. *Equal Emp't Opportunity Comm'n v. Peabody Western Coal Co.*, 610 F.3d. 1070, 1078 (9th Cir. 2010). First, the Court determines whether a nonparty should be joined under Rule 19(a). If so, that nonparty becomes a person required to be joined if feasible. *Id*. Next, the Court analyzes whether it

1  is feasible to order the nonparty to be joined. *Id.* Finally, if joinder of the nonparty is not
2  feasible, the Court must determine whether the case can proceed without the nonparty or if
3  the case must be dismissed. *Id.*

4  "There is no precise formula for determining whether a particular nonparty should be
5  joined under Rule 19(a) . . . The determination is heavily influenced by the facts and
6  circumstances of each case. *Id.* at 1081 (internal citations omitted). And when determining
7  whether an action should proceed in a nonparty's absence, the factors set out in Rule 19(b)
8  for are nonexclusive. *Republic of the Phillippines v. Pimentel*, 553 U.S. 851, 862 (2008).
9  "The general direction is whether in equity and good conscience the action should proceed
10 among the existing parties or should be dismissed." *Id.* The Rule indicates that a
11 determination of whether an action should proceed will turn upon factors that are case
12 specific, "which is consistent with a Rule based on equitable considerations." *Id.* at 862-63.
13 Some factors will be "substantive, some procedural, some compelling by themselves, and
14 some subject to balancing against opposing interests." *Id.* at 863 (internal citations omitted).

15 *1. Joinder of the United States*

16 The Navajo Defendants argue that the United States is a party required to be joined
17 if feasible under Rule 19(a). They assert that the United States has an interest in the subject
18 of this action because the tribal land at issue in the 1969 Lease and the §323 Grant is held in
19 trust by the United States and because this case implicates the Secretary's responsibilities
20 under the 1969 Lease and the §323 Grant.

21 The Court does not agree with the Navajo Defendants that the United States has an
22 interest sufficient to make it a party required to be joined if feasible. The Court can accord
23 complete relief without the presence of the United States. This case does not concern
24 interests in the land subject to §323 Grant; it deals with the extent of the Navajo Nation's
25 authority to enforce the NPEA at the NGS. The United States does not have an interest to
26 protect. The Court therefore finds that the United States is not a party required to be joined
27 if feasible under Rule 19(a).

28

- 7 -

*2. Joinder of the Navajo Nation*

Determining the joinder issue with regard to the Navajo Nation presents a more complex problem. Plaintiffs claim that the Navajo Nation waived its right to regulate employment matters at the NGS in the 1969 Lease. They argue that because the Navajo Nation cannot interfere in employment matters at the NGS, the Navajo Defendants have exceeded their jurisdiction in attempting to enforce the NPEA at the NGS.

The basis for Plaintiffs' suit against the Defendants therefore is in large part the 1969 Lease and its alleged operational waiver.[2] As a party to that Lease, the Navajo Nation has an interest in its contract rights with SRP. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist*, 276 F.3d 1150, 1156 (9th Cir. 2002). The Nation also has an economic interest in this action – the job security of the Nation's members. *Id.* at 1157 (holding that because the plaintiff "challenges the Nation's ability to secure employment opportunities and income for the reservation – its fundamental consideration for the lease with SRP – the Nation . . . claims a cognizable economic interest in the subject of this litigation which may be grievously impaired by a decision rendered in its absence.").

Adjudicating this action without the Navajo Nation will, as a practical matter, impair the Nation's ability to protect its contractual and economic interests, along with its general interest in governing the Navajo reservation. The Court therefore finds that the Navajo Nation is a party required to be joined if feasible under Rule 19(a). *See e.g., Equal Emp't Opportunity Comm'n v. Peabody Western Coal Co.*, 400 F.3d 774, 780 (9th Cir. 2005)(in suit against coal company alleging discrimination based on preferential hiring of Navajos, Navajo Nation was a necessary party because it was a party to the lease with the coal company that required the preferential hiring); *Dawavendewa*, 276 F.3d 1150 at 1155-57 (Navajo Nation was necessary party under Rule 19(a) because it was a party to the lease at

---

[2]The Court recognizes that Plaintiffs also argue that the Navajo Nation does not have inherent authority to regulate non-members of the Nation, such as SRP, even absent the operation waiver.

- 8 -

issue and because of its sovereign and economic interests); *Pit River Home v. United States*, 30 F.3d 1088, 1092 (9th Cir. 1994)(Pit Rive Tribal Council was a necessary party in a suit that might have the result of directly undermining the tribe's authority).

The Court next addresses the feasability of joining the Navajo Nation as a defendant. The Court holds that the Nation cannot be joined as a party because of the Nation's sovereign immunity. Federally recognized Indian tribes have sovereign immunity from suit and cannot be sued absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress, unless the party suing is the federal government. *Dawavendewa*, 276 F.3d at 1159; *Peabody*, 400 F.3d at 781. Plaintiffs do not argue that the Nation has waived its sovereign immunity or that Congress has abrogated that immunity.

Because the Court has found that the Nation should be joined if feasible under Rule 19(a) and that joinder is not feasible, the Court must proceed to Rule 19's final inquiry – whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." F.R.Civ.P. 19(b). Rule 19(b) provides four non-exclusive factors for the Court to consider, but the general inquiry is whether the action equitably can proceed. *Pimentel*, 553 U.S. at 862. The Rule 19(b) determination is "a practical one and fact specific . . . and is designed to avoid the harsh results of rigid application." *Peabody*, 610 F.3d at 1083 (internal citation omitted).

When a party that should be joined under Rule 19(a) has immunity from suit, "there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor." *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994). Nonetheless, courts in this Circuit have discussed the four factors even when a party enjoys immunity from suit. *Dawavendewa*, 276 F.3d at 1162.

*Prejudice*

A judgment for Plaintiffs in this case would prejudice the Nation's economic interest in the 1969 Lease with SRP, namely its ability to provide employment protections and security for its members. *See id*. A Plaintiffs' victory would also prejudice the Nation's

sovereign interests in negotiating contractual obligations and governing the reservation.[3] *See id.*

The absence of the Nation would seem to prejudice Plaintiffs as well. In their prayer for relief, Plaintiffs seek a declaration that Defendants: "(1) may not lawfully apply NPEA to, or enforce it against, SRP . . . at NGS; and (2) may not regulate, through tribal proceedings or otherwise, except as provided in the 1969 Lease, the operation of NGS by SRP . . . , related to employment relations." (Doc. 1, p.12.) Plaintiffs further seek permanent injunctive relief prohibiting Defendants, during the term of the 1969 Lease and except as provided in the 1969 Lease, from:

> (1) commencing, prosecuting, maintaining or considering any tribal proceedings against SRP . . ., seeking to regulate the operation of NGS related to employment relations; (2) applying the NPEA against SRP . . . with respect to the operation of NGS; (3) regulating or attempting to regulate, directly or indirectly, the operation of NGS by SRP . . . related to employment relations at NGS.

(Doc. 1, pp. 14-15.)

The Court does not agree with Plaintiffs that the fact that the Nation would not "technically" be bound by the judgment does not lessen the value of the judgment for Plaintiffs. (Doc. 132, p.15.) An injunction against the current Navajo Defendants, even in their official capacities, would not prevent some future or other tribal authority from attempting to "regulate" employment at the NGS. If what Plaintiffs want is for the Nation never again to interfere with employment matters at the NGS, this lawsuit would not necessarily accomplish that goal. Because a judgment rendered in the absence of the Nation would prejudice the interests of both the Nation and the Plaintiffs, the first factor weighs in favor of dismissing.

---

[3]The Court does not agree with Plaintiffs that the presence of the Navajo officials as Defendants prevents this prejudice.

*Shaping Relief*

Plaintiffs do not believe that the absence of the Nation causes prejudice to the Nation or any of the current parties, so they do not offer any methods for alleviating the prejudice caused by the Nation's absence. The Court on its own has not discovered any relief that would mitigate the prejudice outlined above. This factor therefore also weighs in favor of dismissal.

*Adequate Relief*

As the Court noted above, injunctive relief in the form requested by the Plaintiffs would not award them complete relief. The Nation could still, through some other body or future bodies or officials, attempt to regulate employment matters at the NGS. Accordingly, this factor weighs in favor of dismissal as well.

*Alternative Forum*

Plaintiffs have an alternative forum in this case. Plaintiffs brought an action in front of the Secretary pursuant to the terms of the 1969 Lease. The Secretary initially found against Plaintiffs, then later said he would reconsider that decision, then still later said that he would defer to the Court's determination of the issue rather than reconsider his decision. The Court cannot say that after this Order the Secretary would not reconsider his earlier decision. Nevertheless, even if no alternative forum exists, the Court need not automatically deny the motion to dismiss. *Quileute Indian Tribe*, 18 F.3d at 1460. Plaintiffs' interest in litigating "may be outweighed by a tribe's interest in maintaining its sovereign immunity . . . [S]ociety has consciously opted to shield Indian tribes from suit without congressional or tribal consent" *Id*. at 1460-61.

Balancing these four factors, we find that this case cannot proceed in equity and good conscience in the absence of the Navajo Nation.

*Ex Parte Young*

In addition to arguing that the Rule 19 factors themselves do not require dismissal, Plaintiffs argue that even if Rule 19 normally would mandate dismissal, to do so in this case

- 11 -

effectively would abrogate the *Ex Parte Young* doctrine. Under the doctrine of *Ex Parte Young*, sovereign immunity does not extend to officials allegedly violating federal law in suits for purely prospective relief. *Burlington N. & Santa Fe Ry. Co.*, 509 F.3d 1085, 1092 (9th Cir. 2007)(citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)(holding that Eleventh Amendment immunity did not bar suit against the state's Attorney General to enjoin him from enforcing a law that the plaintiffs alleged violated the Constitution)).

The courts have extended the *Ex Parte Young* doctrine to tribal officials sued in their official capacity for allegedly acting in violation of federal law. *Id.* (citing *Burlington N. R.R. Co v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991)). The *Ex Parte Young* doctrine therefore permits lawsuits like the one here, where the Nation's officials allegedly have violated federal law and the Plaintiffs seek only prospective relief, no damages. In such situations, the Nation's officials themselves do not enjoy immunity from suit. But the officials' immunity is not in question here. Rather, the Court must determine how to resolve the interplay between the *Ex Parte Young* doctrine and the strictures of Rule 19.

The Court appreciates Plaintiffs' concerns. In much the same way parties should not be allowed to attempt "an end run around tribal sovereign immunity . . . by merely substituting tribal officials in lieu of the Indian Tribe," *Dawavendewa*, 276 F.3d at 1160, parties should not attempt an end run around the *Ex Parte Young* doctrine by claiming the absence of the governmental entity necessitates dismissal. But the Court does not agree that dismissing pursuant to Rule 19 in this particular case would effectively abrogate all *Ex Parte Young* cases against officials.

While Plaintiffs do argue that Defendants have violated federal law by exceeding their authority in attempting to regulate the affairs of non-Navajos, they also argue that the Navajo Nation waived any inherent right to regulate employment matters at the NGS by signing the 1969 Lease. Indeed, the contractual waiver issue was the Plaintiffs' main argument to the Secretary.

It is the contractual waiver argument that sets this case apart from the traditional *Ex*

- 12 -

*Parte Young* case where government officials solely are acting pursuant to an allegedly unconstitutional statute, etc.[4] Plaintiffs are asking the Court, at least in the alternative, to bind the Navajo Nation to a lease provision that Plaintiffs believe waives the Nation's right to regulate the employment of Navajos at the NGS. The attempt to interpret and enforce the 1969 Lease without the signatory, the Navajo Nation, as a party interferes with the Nation's sovereign rights, contractual rights, and economic rights.

Like the Ninth Circuit in *Dawavendewa*, the Court concludes that the Plaintiffs' real claim is against the Nation itself. 276 F.3d at 1161 ("At bottom, the lease at issue is between SRP and the Nation, and the relief Dawavendewa seeks would operate against the Nation as signatory to the lease."). So, while the Court has considered carefully the *Ex Parte Young* issue, the Court finds that in this particular case, equity favors honoring the Navajo Nation's sovereignty and dismissing pursuant to Rule 19. The Court's ruling in this case should not be construed as precluding the survival of an *Ex Parte Young* action against Nation officials in the face of a Rule 19 challenge under different circumstances.

Accordingly,

**IT IS ORDERED DENYING** the Navajo Defendants' Motion to Dismiss (Doc. 108).

**IT IS FURTHER ORDERED DENYING** as moot SRP's Motion for Leave to File Sur-Reply (Doc. 115).

**IT IS FURTHER ORDERED GRANTING** the Navajo Defendants' Rule 19(b) Motion to Dismiss (Doc. 125). This case is dismissed in its entirety.

///

///

---

[4] The Court recognizes that the plaintiffs in *Arizona Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128 (9th Cir. 1996) were allowed to maintain an action very similar to this one that included a contractual waiver argument. But nothing in the *Aspaas* record indicates that the defendants there made a Rule 19 dismissal argument.

**IT IS FURTHER ORDERED DENYING** as moot Plaintiffs' Motion for Summary Judgment (Doc. 119) and the Navajo Defendants' Cross-Motion for Summary Judgment (Doc. 127).

DATED this 2nd day of December, 2010.

James A. Teilborg
United States District Judge